3-10-404-9 People of the State of Illinois, Equally by Judith Kelley v. Christopher Coleman, Appellant Karen Daniel. Ms. Daniel? May it please the Court. Good afternoon, Your Honors, and Ms. Kelley. I'm Karen Daniel. I represent Christopher Coleman, who is seeking a new trial based on newly discovered evidence of his actual innocence. Mr. Coleman was convicted of offenses arising out of a 1994 Peoria home invasion that was committed by several men. There was no confession. There was no physical evidence linking him to the crime. He was convicted solely on the basis of the testimony of two victim eyewitnesses. The core of the new evidence of innocence that Mr. Coleman presented at his post-conviction hearing was the testimony of four men who testified that they actually committed the crime, that there were four of the men who actually committed the crime, and that Christopher Coleman was not one of the men who committed the crime. These four offenders had never before been questioned by the police. They had not been charged in this case. They were coming forward for the first time in these proceedings. We presented other evidence at the hearing, but that's the critical evidence. Under the Illinois Due Process Clause, evidence of innocence warrants a new trial when it is, one, newly discovered, two, material and non-cumulative, and three, and this is most important, when it is of such conclusory character as would probably change the result on retrial. Now, as to these four, I call them the uncharged offenders, the four men who came forward for the first time, there is no dispute that their testimony was newly discovered. So in my time today, I'd like to focus on the following two points. First, that the trial court erred in finding that their testimony was cumulative to the evidence presented at trial, and second, that the court below committed manifest error in finding that this evidence was not of such conclusive character as to require a new trial. Let me just, to get started, one of the things, you refer in your brief to this testimony as inculpatory. Of the four uncharged offenders. Yes, of the four. Is it? Well, I understand that Your Honor is probably getting at the fact that the statute of limitations has passed. They were admitting that they committed Class X offenses. It was not against penal interest, that's why they were compelled to testify in these proceedings. It was inculpatory in the English, the usual sense of the term, in that they were admitting guilt, and that is something that folks don't normally do if they're not guilty, even if the statute of limitations has passed. But I take Your Honor's point. Just beginning with whether this evidence was cumulative, it is true that at trial, one of the co-defendants of Mr. Coleman, his name was Robert Nixon, testified. At that time, he'd been charged, he'd pleaded guilty, gotten a good deal, and he testified as to who was there, and he said Mr. Coleman was not there. The trial court found that because of that testimony, our new evidence was cumulative. The fallacy of that reasoning is that simply because evidence is consistent with what's already before the jury doesn't mean that it doesn't add to what was before the jury. And this new evidence... The court found it was cumulative. Didn't he also go on to consider whether all that testimony would affect the outcome? He did. And those are two separate elements of the test, and we believe he erred in... I mean, he eliminated the evidence on both bases, so we feel compelled to address both of them. How do you describe cumulative? We had a case earlier today where there was a case that suggested, First District case, can't recall the name of it, that puts a question in the mind of the juror. That's one way that it's been stated. I believe that you're referring to People v. Ortiz... Yes. ...which is an Illinois Supreme Court decision that came out of the First District. Which relates to the second test that you were just discussing. The... Probably changed the result on retrial. Right. Yeah, it's kind of hard to distinguish because that test seems to bring both of those into play. I think that in many cases, if evidence is not cumulative and it goes to the ultimate issue of fact, which, by the way, that's another way that the test has been stated, or does it go to the ultimate question of who was there and who wasn't? That's the way it was stated in People v. Molstad, which is our most analogous case. Well, let's go to Ortiz. How does that... How does this put a question in the mind of the juror? Well, I'd love to talk about that. When... Well, I guess the best way to do it is let's look at the big picture of this case. The crime was committed by several men. Two were found on the scene when the police got there, so their guilt is not questioned. There were four men who got away. The way that Mr. Coleman was charged was that the police came up with some guesses as to who the men might have been. They showed photos to the victims. The one victim, Tequila Miller, identified them. Charges were placed against Mr. Coleman. But as soon as the two men who were on the scene pleaded guilty, as soon as they got their deals, one got 12 years, one got 15 years in comparison to Mr. Coleman, who got 60, they immediately came to court for Mr. Coleman and said, no, it wasn't these other guys, it was these four men, and they named them. And that... So one aspect of how this would create new questions is that that account has been consistent now over 15 years. The men came forward first, the Nixon and James Coates, the co-defendants came forward in 1995, and now last year, 15 years later, the men who they said were their associates in this crime came forward and agreed with that. So that's one, is the temporal nature of this. Second, it's the fact that all of these people admitted their own guilt. And yes, I realize this is past the statute of limitations, but let's not forget that these men still did not willingly come to court. They practically had to be dragged to court. One was arrested. Another one had a warrant placed against him. Another one threatened to take the fifth. Another one refused to sign an affidavit before trial. They were not leaping at the opportunity to come in and exculpate Chris Coleman. But when they got to court, they all did, and they did so very consistently. Did any one of those four talk about the sexual assault that occurred in the house? None of those four, or the fifth one, James Coates, who testified at the hearing as well, none of them were asked about it. None of them talked about it. I'm a little mystified why that's such a large aspect of the court below's decision. It doesn't indicate that they are not credible because they weren't asked about it. They didn't lie about it. They were asked who was there, and there's no question that they... I don't think there's a real question that they were there because while they didn't discuss those facts, they all discussed details of the crime that they could only have known about if they were there. They all... Well, were all four versions consistent as to who was present? The one inconsistency, and it's easily explainable, was there was inconsistency as to the presence and the participation of DeAndre Coleman, Christopher Coleman's half-brother. He was the new kid on the block. He had not lived in Peoria all his life like the others had. He testified that he didn't know a crime was going to go down and that he merely stood outside during the crime. And so consequently, one of the offenders didn't remember him being there. The others remembered him going to the house. One thought he didn't go in the house. One thought he did go in the house. And the final one didn't say one way or the other. So that was the one area of confusion. Really everything else was pretty consistent in that they all said they went to the back door to get into the house, that James Coates was lifted through the window. When they got inside, they covered their faces. They put the victims on the floor. They herded the victims up to the second floor when the police arrived. Rob Coates said he's the one who hid a gun in the upstairs bedroom, which was a fact that came out at trial. And when the police arrived, that offender started jumping out the window, and we now know from this testimony, they all knew about that, and we know who it was. Lamont Lee and Rob Coates jumped out the window and got away, and James Coates jumped out the window and hurt his ankle, and that's why he was arrested. So other than really that one point, I guess the only other point that you could even really talk about is that when James Coates first testified about this matter back in 1995, he was asked who went to the house. He did not include his own brother. But now his brother has come forward and admitted he was there, so at the post-conviction hearing, he included his brother. Let me just, I'm sorry to interrupt you, but let me just add, did the co-witnesses talk about the presence of this younger gentleman? I think he was 12. Right. Mr. Brooks, Anthony Brooks, they all said he wasn't there. Mr. Brooks came to our hearing and said he wasn't there. Didn't the victim of the trial testify that a young kid came to the door and said, you know, 5-0 or the cops are coming or something? They did testify to that effect. And they also testified that they knew Christopher Coleman and that he committed the crime. Our testimony didn't and doesn't have to erase every aspect of the state's case. But when you bring the evidence that we brought to the post-conviction hearing to the table, it substantially alters the balance. And I have to say, Anthony Brooks, this was a 12-year-old. The only reason he was charged was because he confessed after a detective interrogated him by himself in a police station and refused to believe his denials of guilt. As soon as he got out of the police station, he came back with a relative and said, I didn't do it. But by the time he went to trial, he was kind of in an in-between state because he was on juvenile probation and he was required to tell the truth. And so he kind of gave an in-between statement. He said, well, I did tell the police Christopher Coleman there, but he really wasn't, but I was there and some other people were there. But now he's a grown-up. The juvenile case is behind him. He's got no reason to lie now. And he, like everyone else, said he wasn't there. Again, we are not required to erase all of the evidence of guilt. If you look at the Molstad case, in that case the Supreme Court said, and that was a very similar situation to this case. There was an eyewitness who identified Mr. Molstad, and Mr. Molstad himself testified, as did my client, that he wasn't there and there was alibi evidence for the defense. But after trial, Molstad's five co-defendants came in and said he wasn't there. And the Supreme Court said, we don't question the good faith of the eyewitness, but, gee, this really creates new questions. This gives us pause. And in that case, the co-defendants didn't even testify in the post-trial proceedings. The new trial was granted completely on the affidavits of these witnesses. The question, the ultimate question, and the reason why an actual innocence claim is contemplated by our due process clause is, are we, can justice be satisfied with the verdict without the jury having heard these new witnesses? Or does justice demand that Christopher Coleman not be convicted until a jury has had the opportunity to weigh all of the evidence? The men who said they were there, the men who were accused like Christopher Coleman and said they weren't there, Mr. Brooks, who says he's not there. Is it just to make Christopher Coleman sit in prison for 60 years without the jury having the opportunity to weigh that evidence? I submit that it's not, and I ask your honors to reverse the judgment below and give Christopher Coleman a new trial. Thank you. Thank you, Ms. Daniel. Ms. Kelly. Please support counsel. Many of the questions that your honors have raised during Ms. Daniel's arguments were points that the people had made in their brief, and the people would, of course, continue to rely on those points made in the brief. One thing that's a little concerning is the statement that these witnesses came forward and then followed up by these witnesses had to be dragged into court. This is not a case where a witness came forward many years later with a guilty conscience or did anything. These witnesses were, in fact, I believe, first contacted by the attorneys for Mr. Coleman, including Mr. Coleman's brother, who acknowledged that even though he was taken out of town and hadn't been injured immediately after this accident or incident, he knew by 1999 that his brother had been convicted for this crime. He also theoretically knew that he was there and his brother wasn't. He did nothing. He did not come forward until he was contacted by the attorneys for Mr. Coleman. So I don't believe this is a situation where any of these witnesses came forward on their own. As pointed out, all of the statute of limitations had run, and none of these people could any longer be prosecuted for any of these crimes. Additionally, the people brought out in their brief the inconsistencies between the testimony and the people are not mystified by the child judge's concern with the fact that nobody, during their recounting of what had happened, mentioned anything about the sexual assault, mentioned anything about the violence inflicted on the people in the home, the beatings, all of which was testified to at court. And yet the stories or the testimony given by these uncharged alleged accomplices was very undetailed and quite unemotional, uninvolved. And so, as people pointed out in their brief, it's not the people's burden. It's not the court's burden to ask them whether anything else went on, to ask about the sexual assault. But anybody who had been there would have known what had happened. Most interestingly, of course, the person who had committed the sexual assault, who was identified immediately at the scene by the victim and for whom the physical evidence linked him to the sexual assault, he said nothing about it and, in fact, didn't even plead to it. He has no conviction for that. The judge was stating, which is beyond what most judges do, he was actually stating in his written order the reasons that he had these credibility concerns with regard to these uncharged accomplices, and he did not believe that they were credible. Contrary to the point made in the defendant's reply brief, that the credibility determination cannot be made by the post-conviction hearing judge. In fact, it is his job to make a credibility determination about these witnesses before determining whether a new trial should be granted. I believe in the reply brief counsel, without citations, the record said that should be left to a new jury. In fact, the reason for the evidentiary hearing is to allow the Shire effect to, among other things, make credibility determinations to determine whether the defendant has carried his burden in the post-conviction hearing. If there are no other questions, the people believe that the areas addressed have been covered in the brief and would rest on their brief. Okay. Thank you, Ms. Coyne. Ms. Daniels, a rebuttal? Regarding Mr. Coleman's half-brother who was taken out of town after the offense, he was shot three days after the offense after telling the other guys he was going to testify in Mr. Coleman's behalf. That's why he wasn't at the trial. Again, there's no dispute that this is newly discovered evidence. They didn't come forward on their own. They're criminals. But once in court, they told what had happened. Regarding, again, the failure to mention the sexual assault, I'm going to point out that the Peoria County State's Attorney's Office allowed James Coates, who was proven through DNA testing to have been the rapist, to plead to a non-sex offense. And I read at the guilty plea hearing, and nowhere at the guilty plea hearing does the State's Attorney or anyone mention a sex crime. And he does not have to register as a sex offender. And the same is true of Robert Nixon. So they weren't asked. They didn't mention it. The prosecutor could have asked them about it. They didn't. And it is not an absence that would make it unreasonable for a jury in this case to credit their testimony as to who was present at the crime and who wasn't. It's not disputed there was a rape. It's not disputed that James Coates was the rapist. The question is who else was there. And that's the only question that should have been before the court below and should be before this court. And going to what the credibility determinations should be, if you look at the other cases, if you look at Ortiz, if you look at Molstad, if you look at Washington, which is the seminal case on actual innocence claims, the one that determined that actual innocence is a component of due process in Illinois, in none of those cases did the courts of review or even the circuit courts say they believed the new evidence. They believed these witnesses. The determinations that are made are is this significant? How significant is the evidence? How conclusive is the evidence? And based on that, I submit that the judge's role is not to decide if Mr. Coleman is innocent or guilty. That's the role at the trial. It's not to say do I believe these witnesses or do I believe them over the witnesses who testified at trial because this isn't the bench trial. And that may be right, but let me ask you this. Whether the trial judge believed the witness was probably not the standard, but does he make a determination whether a witness is believable? In other words, was there any reasonable person who could believe as part of a gatekeeping function before you go to a new trial? In other words, can you bring in anybody, any kind, to say incredible things or say things that are just unbelievable? I agree. The judge has a gatekeeping function, but the gatekeeping function is to keep out evidence that no reasonable person could believe. And if you look at what this judge said about the witnesses, and if you read their testimony, which I'm sure you will, you can't conclude that no reasonable person could believe them. The fact that they had criminal backgrounds, that happens. Witnesses do. The fact that there were some inconsistencies, that doesn't mean that no reasonable person could believe them. And that's what the gatekeeping function should be because ultimately the case is going to go to a jury and the jury can decide to believe them or not. And, of course, for the defendant, all the defendant has to do is raise a reasonable doubt of guilt. But it's a very important question is what is the gatekeeping function. But you've got to do more than that at this stage of the game, right? Not just a reason. He's already been convicted beyond a reasonable doubt. Now you're talking about actual innocence. It's not just, gee, other than the jury verdict, could there still be a reasonable, some kind of doubt? No. We have to show that we have new evidence. We have to show it wasn't available at trial. Everybody's agreed as to these witnesses that we've done that. We have to show that the nature of their testimony is conclusive. And that's what's really critical, and that's an easy question in this case. Sometimes the evidence that comes forward might be something that's more circumstantial or something that just casts doubt on a prosecution witness. But then you'd agree with me that's far beyond, or at least beyond, is there a reasonable doubt? Oh, I, right, and perhaps I misspoke.  Those are important, critical parts of the test. I think the conclusive nature of the evidence is the most important part of the test. And, yes, the judge has to keep out crazy stuff, absolutely unbelievable stuff. But this evidence did not fall into that category. There were issues. The judge had issues. But it would not be unreasonable for a jury to credit these witnesses. And, in fact, particularly given their consistency, the fact that we have a closed circle of offenders, all of whom say they were there and that each other was there, that they've been consistent over 15 years, those are all reasons why it's very likely that a jury would credit this testimony. And if they did, they would have to acquit Christopher Coleman. I have a question based on Nixon's testimony, because as I read the trial court's order, he was comparing the testimony that the jury had to the testimony that the four new uncharged offenders would bring to a new trial. Did Nixon say that Brooks or Smurf was there? He named the other offenders. He did not name Brooks slash Smurf. He named himself and the other five that have come forward and testified in these post-conviction proceedings. Because Nixon was the only charged convicted offender who testified, the jury had one version of what happened with the defendant not being present, and the only impeachment was prior crimes. If these four uncharged offenders testified, including Dray, Dray says Smurf was there, and then he backs away from it during his testimony, and the others are confused whether Dray was there. Is it possible that the jury had a better chance of believing that testimony from a co-defendant with Nixon alone versus all five? No, and if you read Dray's testimony, he was confused because he looked at an adult picture of Brooks, but what he very clearly said was there's no 12-year-old there. There's no boy there. All of them said that. There was no young boy there. Nixon might have said that at trial. I wish I could go check right now, but I can't. But certainly, uniformly, at the post-conviction hearing, they said there was no 12-year-old boy there. Well, because the other four are all over the place, and they do contradict each other as to whether they were smoking, whether they were intoxicated, and there's a lot of details that they are not in sync on, but Nixon testified, and his testimony wasn't contradicted by anybody else that was there. Perhaps that was the strongest shot. Well, it was contradicted, of course, by the stakes case, but also he was throwing out names. Some of the names were incomplete. He gave Dray. He gave Rob. Not all of his names were complete, and these people that he was talking about were not mentioned by anybody else at trial. For all the jury knew, he was making them up. Other than James Coates, they'd heard about James Coates, the rapist. The other four people he mentioned, why would the jury even think that they existed? It's qualitatively different when the people themselves come in. First, they show that they are real people. They exist, and second, they say, and he's right. We were there. We did it. I did this. I jumped out the window. I hid the gun. It is qualitatively different, and I would just maybe. You answered my question. Okay. Thank you, Judge. All right. Thank you, Ms. Daniel, and Ms. Kelly. Thank you both for your arguments here this afternoon. The matter will be taken under advisement. A written disposition will be issued. Right now.